**GROUP HEALTH INCORPORATED, et al., Plaintiffs,**

v.

**Richard S. SCHWEIKER, et al., Defendants.**

**No. 82–1695–CIV–EPS.**

United States District Court, S. D. Florida.

Sept. 23, 1982.

## ORDER DISMISSING ACTION AND MEMORANDUM OPINION

SPELLMAN, District Judge.

THIS CAUSE came before the Court on Motion for Preliminary Injunction, and upon the Complaint filed in this action along with supporting affirmations and memorandum of law and responses and replies filed thereafter, and on defendants' Motion to Dismiss.

The plaintiffs in this action are Group Health Incorporated (GHI); the Office and Professional Employees International Union (OPEIU) [local 153 of the OPEIU represents the GHI employees in Florida and New York]; and Dorothy Arthur and Edna Coler [beneficiaries of medical insurance pursuant to Part B of the Medical Act, 42 U.S.C. §§ 1395j et seq.]. The defendants are Richard S. Schweiker, Secretary of the Department of Health & Human Services (Secretary); Carolyne Davis, current Administrator of the Health Care Financing Administration (Administrator) [Health Care Financing Administration (HCFA) administers the federal health care programs]; George A. Thompson (Thompson), who is an Associate Administrator for Operations within HCFA; and the United States of America.

Under the Medicare Program there are two parts: part A concerns hospital benefits and part B concerns non-hospital benefits. 42 U.S.C. § 1395, et seq. Pursuant to the act, the Secretary may enter contracts with private organizations to provide part

B. The Secretary entered into a contract with GHI to provide part B.

The agreement between the Secretary and GHI contained a Jurisdictional provision, Art. IV. This provision, along with the rider attached, provided that GHI was to carry part B for Dade and Monroe County in Florida and Queens County in New York. Also contained in the agreement Article XXVII provided for Term of Agreement.[1] Under this article, the Secretary is required to give 90 days notice before the end of the current period which expires on September 30, 1982, if he intends not to renew the agreement.

On July 1, 1982, 91 days before the contract was to end, Mr. Thompson sent a letter to GHI indicating that the agreement as to Dade and Monroe County would not be renewed. GHI contends this letter was ineffective because it only terminated part of the agreement. According to GHI, the defendants' actions constituted a modification of the agreement pursuant to Article XXVIII[2] and, therefore, required mutual consent of the parties. Moreover, GHI views the termination of Monroe and Dade Counties as a termination under Article XXIX which requires reasonable notice and an opportunity to be heard.

The original complaint in this action was filed on August 10, 1982. Since the original filing, plaintiffs have been offered a hearing on the question of nonrenewal. However, the plaintiff asked for a stay of that hearing pending our determination of questions of law. In this regard, plaintiff claims that this Court's decision on certain questions of law will alleviate the need for a hearing.

The plaintiffs argue that the Thompson letter of July 1 was ineffective as the formal 90-day Notice required by Article XXVII of the Agreement for the following reasons:

1. An "Associate Administrator for Operations" is not authorized to take such action by the terms of the Contract;

2. If an Associate Administrator for Operations were authorized to take such action by the Memorandum, the Limitation on Authority contained in the Memorandum was not satisfied at the time Thompson acted on July 1, 1982, in that the Limitation specifically states that the "authority may be exercised only after the . . . carrier . . . is given an opportunity for a hearing";[3]

3. The defendants' attempt to renew only part of the Agreement under the automatic renewal clause, while purporting to terminate another part of the

---

1. Article XXVII
TERM OF AGREEMENT
This agreement shall begin on October 1, 1980, and end on September 30, 1981. It will automatically be renewed for successive periods of 1 year unless the Carrier or the Secretary gives written notice of intention not to renew the agreement at least 90 days before the end of the current period.

2. Article XXVIII, MODIFICATION OF AGREEMENT, provides in pertinent part:
A. This agreement may be modified at any time by mutual consent of the parties thereto.
B. If the Secretary finds that because of enactment of P.L. 92–603 or any other subsequent legislative changes, modification of this agreement is necessary to carry out the provisions of the Act, as amended, or to perform experiments and demonstration projects pursuant to legislative enactment, he may modify any of the functions, parts thereof, or any other services to be performed by the Carrier. Prior to any such modification, the Secretary shall afford the Carrier an opportunity to consult and participate in planning for adjustments which might be necessary and thereafter provide the Carrier written notice that the modification is to be made within 90 days after a date specified in the notice.

3. The memorandum from Carolyne K. Davis, Ph.D. to the Associate Administrator for Operations provides in pertinent part as follows:
*Authority:*
Sections 1816, 1842, and 1874 of the Social Security Act, as amended (the Act).
Authority to nonrenew existing agreements and contracts with organizations serving as "intermediaries" and "carriers" under the provisions of sections 1816 and 1842 of the Act.
*Limitation of Authority*
This authority may be exercised only after the *intermediary or carrier is given written notice* of intention not to renew the agreement at least 90 days before the end of the current contract period and the intermediary or carrier is given an opportunity for a hearing.

Agreement, is in violation of the law and the terms of the Agreement.

4. The defendants have violated plaintiffs' Constitutional right to due process of law by acting to terminate the Florida portion of the GHI Agreement before providing the hearing to which GHI was entitled.

GHI moves this Court for a preliminary injunction. The government opposes the issuance of a preliminary injunction and as an initial objection claims that this Court does not have jurisdiction. Subsequent to its initial response to the plaintiffs' pleadings, the government filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction.

On September 15, 1982, the plaintiffs moved for a Temporary Restraining Order. Apparently the defendants established a Transition Committee to implement the defendant Thompson's decision to "nonrenew" GHI's agreement. As of September 17, 1982, GHI was informed that the incoming claims were to be transferred to Blue Shield. Instead of opening the mail and processing the Part B claims, GHI was instructed to forward the unopened mail to Blue Shield for processing. In addition, GHI was to transfer its post office mail box number to Blue Shield on Thursday, September 14, 1982, and measures were taken for GHI employees to stuff notices of the transition into its outgoing mail to the Medicare beneficiaries.

The defendants agreed to maintain the status quo as to the above transfer of mail boxes and claims until Tuesday, September 21, 1982, at 5:00 o'clock p.m. On September 20, 1982, this Court heard oral argument with regard to the issue of jurisdiction. ▮ The government argues that the court of claims has exclusive jurisdiction over the plaintiffs' claims. The Contract Disputes Act provides only two methods of review for resolving government contract disputes: appeal of a contracting officer's decision to the Board of Contract Appeals, 41 U.S.C. § 606 or seek relief directly in the Court of Claims 41 U.S.C. § 609; *Paragon Energy Corp. v. United States,* 645 F.2d 966, 970 (Ct.Cl.1981).

Also, the Act amended 28 U.S.C. § 1346(a)(2) by stripping the district courts of jurisdiction of any civil action or claim against the United States "which are subject of the Contract Disputes Act."

In response, the Plaintiff argues that the Contract Disputes Act pertains to claims of money damages against the United States based on contracts. 41 U.S.C. § 605(c)(1). The act was never meant to divest the District Courts of their traditional authority to grant preliminary injunctions and render declaratory relief. G. Coburn, *The Contracts Disputes Act of 1978,* at 21 n. 12.

As applied here, plaintiff claims it seeks Injunctive and Declaratory relief—i.e. that under the Medicare Act and regulations, they are entitled to a hearing and that under the Administrative Procedures Act the agency's action was arbitrary and capricious and not in accordance with law under § 706, and a preliminary injunction enjoining the defendant from terminating the contract should issue.

In reply, the government indicates that Article XXIII of the Contract provides that it is subject to the Contract Disputes Act of 1978. The government argues that the Court of Claims has no power to grant purely injunctive or declaratory relief; however, the claims here are essentially contract dispute claims which counsel for the plaintiff is trying to cast as actions for injunctive or declaratory relief. The courts have consistently rejected such attempts. *American Science & Engineering Inc. v. Califano,* 571 F.2d 58 (1st Cir. 1978). *International Engineering Co. v. Richardson,* 512 F.2d 573 (D.C.Cir.1975) (Court reversed District Court finding of subject matter jurisdiction—plaintiff had invoked 28 U.S.C. §§ 1346 & 5 U.S.C. § 701 et seq.); *Alabama Rural Fire Ins. Co. v. Naylor,* 530 F.2d 1221 (5th Cir. 1976).

In *Naylor,* plaintiff sought and obtained injunctive relief in the District Court in an action for declaratory and injunctive relief upon a claim that a Federal Agency's attempted rescission of a contract was in ex-

cess of authority and illegal. No money damages were asserted. The Fifth Circuit held that the District Court was without subject matter jurisdiction. The Court noted that:

... The gravamen of Alabama Rural's complaint is a claim for breach of contract, since assuming that the appellants wrongfully rescinded the award of the contract, their subsequent non-performance placed the government in breach. *See Allen M. Campbell Company v. United States,* 1972, 467 F.2d 931, 181 Ct.Cl. 774. Congress specifically waived sovereign immunity when it established the Court of Claims and vested in that court jurisdiction over actions *ex contractu* against the United States, but limited that waiver by giving that court jurisdiction only to award damages, deliberately withholding equitable powers from it. *Richardson v. Morris,* 1973, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647; *Glidden v. Zdanok,* 1962, 370 U.S. 530, 577, 82 S.Ct. 1459, 1487, 8 L.Ed.2d 671, 703. Should we hold in this controversy that the district court had jurisdiction under the APA to exercise its equitable powers so as in effect to compel the United States to perform the disputed contract we would, as was eschewed in *Warner v. Cox,* [487 F.2d 1301 (5th Cir.)] *supra,* be destroying the jurisdiction of the Court of Claims by implication. (Footnotes omitted).

Based on the above, the Fifth Circuit reversed and remanded.

Also, in *S.J. Groves v. United States,* 495 F.Supp. 201 (D.Colo.1980), the plaintiff cast, as here, the action for injunctive, mandatory and declaratory relief. The Court held plaintiff's claim arose out of contract with the government; and, therefore, the court had no jurisdiction over the subject matter even if Court of Claims could not grant the injunctive and declaratory relief sought by plaintiff. The Court indicated:

It is established that Court of Claims jurisdiction can not be evaded by framing a district court complaint to seek only injunctive, mandatory, or declaratory re-

lief against government officials or the United States.

[citations omitted]

... To allow the district court to grant relief in excess of the jurisdictional limits of the Court of Claims in this case would undermine the jurisdiction of both. The resolution of this contract dispute is more appropriately within the expertise of the Court of Claims and the damages remedy is adequate.

Plaintiffs assert that defendant has erroneously characterized its cause of action as limited to the contract, and has continually disregarded the presence of the plaintiff beneficiaries and union. In this regard, plaintiffs contend that the beneficiaries, the union and GHI are "arguably aggrieved by the defendant Thompson's action in 'nonrenewing' or terminating the Florida portion of the GHI carrier agreement without first providing the opportunity for a hearing." Accordingly, plaintiffs challenge the defendants' action pursuant to 5 U.S.C. § 702 and invoke mandamus jurisdiction.

The Court finds that with regard to 28 U.S.C. § 1361 mandamus jurisdiction is properly invoked. When the possibility appears that a federal official may not have complied with the agency procedures, or other procedures which govern his conduct, mandamus jurisdiction is properly invoked. *Pacemaker Monitor Corp. v. U.S. Government,* 440 F.Supp. 473 (1977), *Andujar v. Weinberger,* 69 F.R.D. 690, 693–94 (S.D.N. Y.1976), *Ryan v. Shea,* 525 F.2d 268 (10th Cir. 1975).

With regard to the above, the memorandum from Davis to Thompson contains a limitation of authority which requires an opportunity for a hearing. Also, as a second basis for mandamus jurisdiction, plaintiffs claim that 42 C.F.R. § 421.205(b) mandates a hearing. This section provides:

(b) *Notice and opportunity for hearing.* Upon notification of the Secretary's intent to terminate the contract, the carrier may request a hearing within 20 days after the date on the notice of intent to terminate.

The plaintiffs argue that the above is sufficient to invoke the Court's mandamus jurisdiction.

■ Mandamus is an extraordinary remedy. Mandamus does not supersede other remedies but comes into play where there is a want of remedies. Before mandamus relief will issue, there must be three elements coexisting: (1) a clear right in the plaintiff; (2) a clear duty on the part of the defendant to do the act in question; (3) no other adequate remedy available. *Carter v. Seamans,* 411 F.2d 767, 773 (5th Cir. 1969).

■ As applied here, defendants rely on 42 C.F.R. § 421.205(b) as creating a "clear right" to a hearing upon termination. Moreover, plaintiffs claim that there is no adequate substitution for the mandamus remedy.

In response, the Defendants contend that the issue presented here is whether the Administrator acting under the contract may make changes in the carrier's jurisdiction at the expiration of the term of the agreement through nonrenewal under Article XXVII "Term of Agreement".[4]

The Court finds that this is a question of contract interpretation, and, therefore, it is pursuant to Article XXIII more appropriately before the Court of Claims.[5] Also, the type of mandamus relief requested is an opportunity to be heard. Since the defendants have indicated a willingness to provide a hearing with regard to nonrenewal which the plaintiffs have requested this Court stay, there is an adequate alternative remedy for the plaintiffs. The Court did not act upon this motion but during oral argument defense counsel for the plaintiffs indicated

that this hearing on nonrenewal was not what was really desired; rather, plaintiff wanted a hearing on the issue of termination. Therefore, in light of the above, plaintiffs' request for a stay of the administrative hearing is denied, and plaintiffs are directed to seek its remedy either at the hearing which defendants have offered on nonrenewal, or in the Court of Claims. In this regard, the Court notes that even though the plaintiff union and beneficiaries do not claim money damages, and the Court of Claims is unable to provide injunctive relief, the Court of Claims may provide limited equitable relief in the form of reinstatement, 28 U.S.C. § 1491 or reformation of the contract. In addition, this Court finds that the actual remedy which the plaintiffs are entitled to is a hearing on nonrenewal, and at this time a hearing has been offered and as to date, not been accepted.

In sum, the Court finds that although jurisdiction of the instant case may be present pursuant to 28 U.S.C. § 1361, the Court is of the opinion that because there is an adequate remedy available either in the Court of Claims or in the administrative hearing heretofore offered the plaintiffs, mandamus relief should be denied. Therefore, the Court, mindful that mandamus jurisdiction may exist in this situation, declines to exercise that jurisdiction.

Pursuant to the inherent power of the Federal Courts to hear constitutional claims, *Marbury v. Madison,* 5 U.S. 137, 2 L.Ed. 60 (1 Cranch 137, 1803), and 28 U.S.C. § 1331, the plaintiffs assert that this Court has subject matter jurisdiction to hear plaintiffs' claims. In this regard, plaintiffs

---

**4.** Plaintiffs contend that Thompson's actions amounted to a termination of Agreement pursuant to Article XXIX. That article provides in pertinent part:

A. This agreement may be terminated at any time by mutual consent of the parties thereto.

B. If the Secretary finds, after reasonable notice and opportunity for hearing to the Carrier, that:

(1) the Carrier has failed substantially to carry out this agreement, or

(2) the Carrier is carrying out this agreement in a manner inconsistent with the efficient and effective administration of Part B of Title

XVIII of the Act, the Secretary may terminate this agreement at any time.

The opportunity for hearing to the Carrier as provided under this paragraph shall be conducted in accordance with the hearing procedures as contained in the Health Care Financing Administration Regulations entitled, "Federal Health Insurance for the Aged and Disabled," 42 CFR Part 421.

**5.** Article XXIII is titled Disputes, and provides that the agreement is subject to the Contracts Disputes Act of 1978.

argue that by failing and refusing to provide the opportunity for a hearing as required by the Due Process clause of the Fifth Amendment, the memorandum from Davis to Thompson and the medicare statute and regulations, the defendants have deprived them of constitutional rights.

Jurisdiction over the subject matter of an action to enjoin the nonrenewal of a Medicare provider agreement under 28 U.S.C. § 1331 was rejected in *Northlake Community Hospital v. United States,* 654 F.2d 1234, 1238 (7th Cir. 1981). The Fifth and Eleventh Circuits have not reached the conclusion of the Seventh Circuit that the Medicare Act precludes jurisdiction under section 1331 over constitutional claims. *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328, 332 (5th Cir. 1978); *United States v. Sanet,* 666 F.2d 1370, 1374–75 (11th Cir. 1982). However, the Court found that availability of a remedy against the government in the Court of Claims was sufficient.

As applied here, the defendants argue that this Court need not reach that issue because GHI has a remedy in the Court of Claims under the Contract Disputes Act. In addition, the Supreme Court has recognized that the statutory structure of the Medicare Act expressly authorizes review of specified determinations and therefore provides evidence of Congressional intent to preclude judicial review of other determinations. *United States v. Erika,* —— U.S. ——, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982).

The majority of Fifth and Eleventh Circuit cases involve claims for reimbursement and in each of the cases the plaintiffs either sought money damages or their claims were already susceptible to being recast as claims for money damages. *United States v. Sanet,* 666 F.2d 1370, 1374–75 (11th Cir. 1982); *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328, 332 (5th Cir. 1978) (en banc); *Alabama Hospital Association v. Califano,* 587 F.2d 762, 763–64 (5th Cir. 1979). After recasting the claims as for money damages the Eleventh and Fifth transferred the above cases to the Court of Claims thereby avoiding the issue of whether Section 1395ii operates to preclude jurisdiction over Constitutional claims.

In other cases where the claim could not be recast as a monetary claim, the Court of Appeals addressed the constitutional claim and then held it to be insubstantial. *Pushkin v. Califano,* 600 F.2d 486, 491–92 (5th Cir. 1979); *Bussey v. Harris,* 611 F.2d 1001, 1006 (5th Cir. 1980).

Plaintiffs argue that the complaint by the beneficiaries, the union and GHI that the defendants did not follow the required procedures is incapable of being recast as a claim for damages against the United States. Plaintiffs urge this Court to interpret Section 1395ii as to preserve its constitutionality and find that it does not bar jurisdiction in the District Court over constitutional claims. According to Plaintiffs, "this is a case in which a government official has acted outside his authority and failed to provide a hearing required by his own regulations and required by the Due Process Clause."

■ Again, in this regard, the Court cannot help but note that the defendants have offered the plaintiffs an opportunity for a hearing. Plaintiffs refusal to accept that hearing is inconsistent with the assertion now that their due process rights have been violated. In the Court's view, the remedy which the plaintiffs seek has been provided. The plaintiffs are therefore instructed to seek their relief in the administrative hearing offered by the defendants. Moreover, the Court finds that although the plaintiffs insist their claims are not for monetary relief, the basis for this cause of action is breach of contract, and, therefore, more properly before the Court of Claims. Therefore, since the plaintiffs have been offered a hearing, and all avenues of review have not been precluded in that the Court of Claims is an Article III Court empowered to entertain constitutional claims, 28 U.S.C. § 1491, the Court declines to exercise jurisdiction.

As alternate grounds for jurisdiction, plaintiff asserted in the original and amended complaint 28 U.S.C. § 1346 and 5 U.S.C. § 702–704.

■ Section 1346 provides for concurrent jurisdiction in the District Court and the

Court of Claims. However, this section has long been construed as authority only for actions for money damages, and not suits for equitable relief against the United States. *Richardson v. Morris,* 409 U.S. 464, 465, 93 S.Ct. 629, 630–31, 34 L.Ed.2d 647 (1973). Since the Court of Claims has no power to grant equitable relief and the jurisdiction of the District Court was expressly made concurrent with the Court of Claims, *Id.* at 465, 93 S.Ct. at 630–31, this Court is without jurisdiction.

■ With regard to this Court's subject matter jurisdiction under the Administrative Procedures Act (APA), 5 U.S.C. §§ 701 et seq., the Court finds that Congress has by statute precluded judicial review of decisions of the Secretary under the Medicare Act.

Congress, by incorporating 405(h) into the Medicare Act by 42 U.S.C. § 1395ii but not the judicial review provisions of 405(g) specifically precluded District Court review of decisions by the Secretary. Therefore, the Court finds that the APA is not properly invoked as a basis of subject matter jurisdiction in this case.

■ An additional basis for jurisdiction has been asserted in plaintiffs' response to motion to dismiss and upon oral arguments. Plaintiffs claim that GHI is in the position of an unsuccessful bidder and that the District Court has jurisdiction over unsuccessful bidders. *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970). *Hayes International Corp. v. McLucas,* 509 F.2d 247 (5th Cir. 1975). In this regard, GHI notes that it is a Medicare contractor for the year 1981–82 in Florida. However, with respect to the upcoming year, 1982–83, it is in the legal position of an unsuccessful bidder.

The Court disagrees. There is no evidence that any invitation for bids was requested or even that GHI alleges that it made a bid. Therefore, the case is easily distinguished from *Scanwell* and *Hayes.* Plaintiffs are merely attempting to characterize what it alleges as defendant Thompson's acting outside his authority in failing to grant GHI an opportunity to be heard as the legal equivalent of an unsuccessful bidder. The Court is not inclined to accept this analogy and, consequently, finds no jurisdiction on this basis.

One final basis for jurisdiction has been alleged by plaintiffs pursuant to 5 U.S.C. § 301 and 28 U.S.C. § 1331. This basis like the one above was raised for the first time in plaintiffs response to defendants' motion to dismiss. Plaintiffs claim that § 301, if any statute, authorizes subdelegation of authority. Since part of plaintiffs' claim arises from the Davis memorandum to Thompson, plaintiffs argue that jurisdiction is founded upon § 1331.

The Court does not find this argument persuasive. As has been noted elsewhere in this opinion, the remedies sought by the plaintiff have been provided and to the extent that other relief based upon the constitution or otherwise is sought, the plaintiff should pursue those claims in the Court of Claims.

Assuming for the purposes of this discussion that the Court has jurisdiction, the plaintiffs do not meet the criteria for issuance of a preliminary injunction.

■ A preliminary injunction is an extraordinary and drastic remedy. A Court should not grant such relief unless the movant can clearly carry its burden of persuasion. *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 573 (5th Cir. 1974). The prerequisites for a grant of preliminary injunction are as follows: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) substantial threat that plaintiff will suffer irreparable injury if injunction is not granted; (3) the threatened injury to plaintiff outweighs the threat of harm the injunction may do to defendant; (4) the absence of disservice to the public interest if injunction should be granted. *Id.* at 572.

■ Applying the above criteria to this case, the Court finds that plaintiffs fail to carry the burden of persuasion.

## I. SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

GHI claims that it was entitled to a hearing on the issue of termination. In this

regard, the Court interprets the action by the defendant Thompson as a nonrenewal as opposed to a termination. Therefore, Plaintiffs assertion that they are entitled to a hearing on the issue of termination is without merit.

As to a hearing with regard to nonrenewal, the Court finds that as evidenced by the communication from Davis to Thompson such a hearing is necessary because of the limitation of authority. However, since such a hearing has been offered to plaintiffs, the question is moot. Plaintiffs' counsel has taken the position that with regard to all the Plaintiffs, he seeks a hearing on the issue of termination and not with regard to nonrenewal.

In addition, there is a question of standing with regard to the plaintiff beneficiaries and the Union. The Plaintiffs allege that these parties are third-party beneficiaries of GHI's Medicare contract. In this regard, the plaintiff must demonstrate that it was the intent and purpose of the contracting parties to confer a direct and substantial benefit upon the third parties. *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Services*, 400 F.2d 465 (5th Cir. 1968). The Court finds some difficulty with the assertion that the union employees of the government contractor are third-party beneficiaries. *See e.g. Kanarek v. United States*, 314 F.2d 802 (Ct.Cl.1963); *Hoopes v. Equifax*, 611 F.2d 134 (6th Cir. 1979). Also, as to the Medicare beneficiaries, although the Court finds less difficulty with their standing as third-party beneficiaries, the Court finds no injury to them as a result of the nonrenewal of GHI's contract. There is no indication that their benefits will be interrupted. Therefore, the Court concludes there is no substantial likelihood of success on the merits.[6]

## II. IRREPARABLE INJURY TO PLAINTIFF

After reviewing the Affidavits submitted by GHI in support of preliminary injunctive relief, the Court finds that there will be no irreparable harm to plaintiffs.

Plaintiff, GHI, may recover all allowable costs incurred in the implementation of defendants decision of nonrenewal pursuant to Article XXIX and Section 1139 of Appendix B to the contract. If GHI is not reimbursed, it may assert a claim against the United States under the Contract Disputes Act. The temporary loss of money is not irreparable injury. *See Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974). A breach of contract by the United States on account of an improper contract termination would subject the Government to monetary damages. Similarly, a contract modification or change not authorized by the terms of the contract would be a breach of contract which also potentially entitles plaintiffs to monetary damages. *See e.g. Allied Material & Equipment Co. Inc. v. United States*, 569 F.2d 562 (Ct.Cl.1978).

As to the medicare beneficiaries, any potential harm to them is at best speculative. In fact, the distinct possibility exists that the transfer of services to Blue Shield may bring improvements to the administration of the Medicare program in Dade and Monroe Counties. Mere unfounded fear is not an appropriate basis for a preliminary injunction and certainly not an irreparable injury.

## III. THREATENED INJURY TO PLAINTIFF OUTWEIGHS THREAT OF HARM TO THE DEFENDANTS

At this time, plans for the transition have already commenced. Any injury to plaintiffs will be in the form of money damages or as noted above be speculative. As to the defendants, any harm to them would be related to the smooth implementation of the program and, in that sense, more akin to the public interest. Therefore, the Court would view the threatened injury to defendant by way of the interest of the public at large to be more seriously threatened.

---

6. Although none of the parties have raised this point, the Court notes in passing that a possible argument could be asserted that the contract is severable: Dade and Monroe County, Florida being one part and Queens County being the other.

## IV. DISSERVICE TO THE PUBLIC INTEREST

The policy determination not to renew GHI's contract was made after thorough review of GHI's performance. The decision was an integral part of policy determinations of how best to administer Part B of the Medicare Program and allocate limited resources in a manner best serving the public as well as the beneficiaries of the Medicare Act.

The public interest lies in the effective administration of the Medicare Program nationwide. The Secretary and the Administration of HCFA are in the best position to evaluate the most efficient administration of the Medicare Program. Therefore, if the injunction were to issue, it would obstruct the administration of the Medicare Program and deplete resources otherwise available for other programs contrary to public interest.

Therefore, having reviewed the record and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that this action is dismissed without prejudice.